IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARK E. BOYD,**
  **Plaintiff,**

vs.               **Civil Action 2:06-CV-161**
                   **Magistrate Judge King**

**AMERICAN ELECTRIC POWER
SYSTEM LONG-TERM DISABILITY PLAN,**
  **Defendant.**

## OPINION AND ORDER

This is an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1132 ("ERISA"), in which plaintiff seeks the restoration of benefits under his employer's long-term disability ("LTD") plan. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on the parties' cross motions for judgment on the administrative record ("*Plaintiff's Motion*" and "*Defendant's Motion*"), Doc. Nos. 19, 21, and on *Plaintiff's Motion for Leave to File a Reply Memorandum in Support of his Motion for Judgment on the Merits Instanter* ("*Plaintiff's Motion to File Reply*"), Doc. No. 26. For the reasons set forth below, *Plaintiff's Motion to File Reply* is **GRANTED** in part and **DENIED** in part, *Plaintiff's Motion* is **GRANTED** and *Defendant's Motion* is **DENIED**.

**I.  FACTS**

Plaintiff began his employment as a maintenance mechanic at American Electric Power ("AEP") on December 15, 1993. *Complaint* ¶ 9; *Answer* 9. On May 24, 2000, plaintiff was involved in a serious motorcycle accident, *Complaint* ¶ 9, and suffered orthopedic and other

injuries.[1] On June 15, 2000, plaintiff applied for benefits under the AEP LTD Plan (the "Plan"). *Complaint* ¶ 1; *Administrative Record* ("*AR*") at 1-110.

Under the summary plan description (the "SPD"), longterm disability benefits are available under the following circumstances: "If you are unable to perform the duties of **your** job, you are eligible for benefits for up to 24 months from the date of your disability. Then, if you are unable to perform the duties of **any** job for which you are reasonably qualified by your education, training and experience, you may receive benefits up to the maximum benefit period." *A.R.* at 75. (emphasis in original). The SPD also provides that "[a]ny disability benefits you receive will be reduced by other income you receive while disabled from other sources. These other sources include … [a]ny disability benefits you are eligible to receive from Social Security." *Id.* at 76.

On June 21, 2000, AEP submitted plaintiff's claim to the claims administrator of the Plan, Broadspire Services Inc. ("Broadspire"). *Id.* at 112. Plaintiff's application was granted and he began receiving benefits on September 28, 2000. *Id.* at 113-122, 133-34.

On September 20, 2001, Broadspire advised plaintiff that it "believe[d] a Social Security application on your behalf is warranted" and offered assistance in seeking these benefits through Allsup, Inc., a specialized claims administrator. *Id.* at 348. On November 26, 2003, plaintiff's Social Security disability claim was approved. *Id.* at 362-370. In accordance with the terms of the Plan, the Plan was reimbursed $37,882.00 by the Social Security Administration ("SSA") for disability insurance benefits paid by the Plan to plaintiff. *Id.* at 386.

On April 2, 2002, the Plan notified plaintiff that he qualified for continued LTD benefits

---

[1]The record documents a variety of physical and mental impairments.

2

because he was unable to perform the duties of any job:

> Based on the Plan's requirements, it states that after the twenty-four (24) month mark of LTD benefits, you must meet the definition of being totally disabled from any job for which you are reasonably qualified based on education, training, skills or experience.
>
> Upon a complete review of your claim, it was determined that you do meet this definition of being "totally disabled from any job." Therefore, your benefits will continue beyond this twenty-four (24) month mark, or May 25, 2002. Per the Plan requirements, you will continue to receive LTD benefits as long as you continue to meet the above definition and remain under the regular care of a licenced physician that is appropriate for your condition. We will continue to monitor your disability status by periodically requesting updated medical and/or other documentation to verify your continued eligibility for Long-Term Disability Plan benefits.

*Id.* at 191.

However, on October 23, 2003, defendant terminated plaintiff's LTD benefits effective November 30, 2003, after concluding that plaintiff no longer met the definition of disability. *Id.* at 244-46, 468-69. That decision was upheld at the first level of appeal. *Id.* at 507.

Plaintiff further appealed that decision and, on June 3, 2004, defendant submitted plaintiff's medical records to Joseph Pachman, M.D., Ph.D., for review. *Id.* at 549. Dr. Pachman "recommended that the claimant be considered to be permanently and totally disabled, without any meaningful work capacity for performing the duties of any occupation for which he is qualified by training, education, background or experience." *Id.* at 549. Dr. Pachman's conclusion was based on "the well documented current dysfunction now reported by several treating physicians, that has been well objectified with the results of imaging studies, and refractory to maximal medical, rehabilitative and surgical intervention[.]" *Id.* at 551. Dr. Pachman also concluded that plaintiff's condition had reached "maximal medical improvement" and he therefore recommended "that the applicant be considered to be permanently and totally

3

disabled, and without any meaningful work capacity for which he is qualified." *Id.*

On June 18, 2004, the Plan reversed its termination of plaintiff's LTD benefits, concluding that plaintiff was "incapable of performing any occupation for which [he was] reasonably qualified." *Id.* at 558. Plaintiff's LTD benefits were reinstated retroactive to December 1, 2003. *Id.* at 559.

On September 9, 2004, AEP personnel advised Broadspire of two different articles that had appeared in the *Daily Sentinel,* Pomeroy, Ohio, which featured "Deputy Mark Boyd, the Meigs County K-9 handler for the Sheriff's office," and referred to a drug search and a public presentation by plaintiff. *Id.* at 653-58. Upon inquiry by the claims administrator the following day, plaintiff indicated that he had been associated with law enforcement since prior to his employment by AEP and that, as a feature of his physical therapy, he volunteers his services as a dog trainer for the Meigs County Sheriff's Department. *Id.* at 1132-33. Based upon this information, defendant scheduled a functional capacity evaluation ("FCE"). *Id.* at 695-725. The testing procedure, conducted on September 26, 2004, lasted approximately two hours. *Id.* at 695. The FCE concluded that plaintiff could perform light exertion for short periods of time and that he may be unable to work an eight hour day five days per week. *Id.* at 697. In November 2004, the claims administrator advised defendant "that FCE was discussed w/DWeiss and results indicate [employee] cannot work 8 hour day 5 days a week. Determined benefits will continue until next scheduled request for up-dated meds." *Id.* at 1138.

On April 6, 2005, Broadspire Field Care Manager Carole Fisher sent an email to Broadspire Claims Specialist Lisa Tekula:

> Lisa, I received this case for an E[mployability] A[ssessment] today. The FCE [from September 2004] indicates light occasional lifting at mid range body level

4

> with occasional standing and walking, and rest breaks when needed throughout the day. It is also stated that the claimant is limited to short durations of any activities or avoiding prolonged positioning. The report indicates he may be limited in his ability to maintain an 8 hour workday. How do you want these tolerance issues handled?

*Id.* at 823.  On April 8, 2005, Fisher indicated that "Lisa Tekula, claims examiner, requested ... additional information on this case. She indicated he is a dog trainer." *Id.* at 825.  On April 11, 2005, Fisher apparently reviewed three documents from plaintiff's medical file and interviewed plaintiff by telephone. *Id.* at 831.  She completed an Employability Assessment Report ("EAR"), *Id.* 830, and concluded that plaintiff "is employable" as a dispatcher "based on the light physical capacity with restrictions." *Id.* at 836.

On June 2, 2005, Russell Superfine, M.D., a specialist in internal medicine, reviewed the September 2004 FCE (which indicated that plaintiff was capable of performing light exertion of short duration and that he may be limited in his ability to maintain an eight hour day five days per week) and documents completed by plaintiff and his treating family physician indicating that plaintiff remained totally and permanently disabled. *Id.* at 850-97.  Based on these documents, Dr. Superfine concluded that plaintiff could perform at least sedentary exertion throughout an eight-hour workday. *Id.*  Based on Fisher's EAR and Dr. Superfine's review, Broadspire informed plaintiff on June 7, 2005, that his LTD benefits would end July 15, 2005. *Id.* at 677-78; *Defendant's Motion at 7*.

Plaintiff appealed that decision on June 27, 2005, referring to other evidence in his file, including an MRI, physician letters and office notes. *Id.* at 901-03, 951-54.  The decision to terminate plaintiff's LTD benefits was affirmed after three peer reviews of plaintiff's medical file. *AR* at 916-918, 920-927, 936-939, 945-49, 940-43.

5

Plaintiff further appealed that decision, *Id.* at 951, submitting letters and progress notes from his physicians and records from the Veterans Administration Clinic in Chillicothe, Ohio. *Id.* at 960-64, 995-97, 1001-52.  Three more peer reviews were conducted. *AR* at 1054-61, 1062-67, 1068-74.  Although many relevant medical documents, administrative decisions and physician letters and reviews were included in the documentation given to each reviewer, *see AR* at 937-39, 940-44, 945-49, 1054-61, 1062-67, 1068-74, some of those reviewers were not provided all the relevant medical evidence.  Moreover, Dr. Pachman's June 2004 report, *AR* at 546-51, which concluded that plaintiff was permanently and totally disabled and had reached maximum medical improvement, was not provided to any of the six reviewers.  Based on these peer reviews, the decision to terminate benefits was again affirmed, effective December 2005.  With this decision, plaintiff had "exhausted all mandatory appeal procedures under the Plan." *Id.* at 987.

## II.     STANDARD OF REVIEW

A challenge to an ERISA plan's denial of benefits is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Shields v. Reader's Digest Ass'n*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  If a plan grants such discretionary authority, the plan administrator's decision to deny benefits is reviewed under the deferential "arbitrary and capricious" standard of review. *Id.* (citing *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (*en banc*)).

The parties in this action disagree as to the appropriate applicable standard of review.  Defendant claims the arbitrary and capricious standard, contending that the 2005 LTD Plan,

which was in effect when plaintiff's benefits were terminated and which includes discretionary language sufficient to invoke the arbitrary and capricious standard of review, controls. Plaintiff initially argued that the 2001 LTD Plan in effect on April 2, 2002, controls; he further argues that that version did not include discretionary language sufficient to invoke the arbitrary and capricious standard of review. *Plaintiff's Motion* at 27. *See AR* at 191. However, the 2001 LTD Plan contains the same discretionary language contained in the 2005 LTD Plan. Doc. No. 25 (citing to *AR* at 24, 1280). In his reply, plaintiff argues that the controlling LTD Plan is the plan in effect when plaintiff was originally "determined to be disabled under the plan prior to January 1, 2001." *Plaintiff's Reply Memorandum in Support of His Motion for Judgment on the Merits* ("*Plaintiff's Reply*") at 2, attached to *Plaintiff's Motion to File Reply*. Assuming that the plan to which plaintiff refers in the plan in effect when plaintiff was originally found to be disabled on September 28, 2000, *AR* at 113-22, 133-34, that plan also included discretionary language sufficient to invoke the arbitrary and capricious standard. *See* 1995 LTD Plan, *AR* at 95-96; the 2001 LTD Plan, *AR* at 72-84 and 1280; and the 2005 LTD Plan, *AR* at 71. This Court finds that any plan applicable to this action contains discretionary language sufficient to invoke the deferential arbitrary and capricious standard of review.

The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action ... . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Evans v. UnumProvident Corp.,* 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Perry v. United Food & Commercial Workers Dist. Unions, 405 & 442,* 64 F.3d 238, 241 (6th Cir. 1995)). An administrator's decision will be upheld "'if it is the result of a deliberate principled reasoning

process, and if it is supported by substantial evidence.'" *Id.* (quoting *Baker v. United Mine Workers of America Health & Retirement Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991)). However, the arbitrary and capricious standard does not require a court to merely rubber stamp the administrator's decision; instead, a court "must exercise review powers." *Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004). *See also Glenn v. Metropolitan Life Ins. Co.,* 461 F.3d 660, 666 (6th Cir. 2006).

### III.  ANALYSIS

#### A.  Conflict of Interest

Although this Court will review the termination of plaintiff's benefits under the highly deferential "arbitrary and capricious" standard, the Court will also take into consideration the fact that defendant is acting under a potential conflict of interest because it is both the decision-maker, determining which claims are covered, and the payor of those claims.  *See Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (citing *Marks v. Newcourt Credit Group*, 342 F.3d 444, 457 (6th Cir. 2003)).  "As the plan administrator, [defendant] had a clear incentive to contract with individuals who were inclined to find in its favor that [plaintiff] was not entitled to continued LTD benefits."  *Id.*  *See also Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n. 4 (6th Cir. 2000).  "The 'possible conflict of interest' inherent in this situation 'should be taken into account as a factor in determining whether [defendant's] decision was arbitrary and capricious.'"  *Emerson*, *supra* (quoting *Davis*, *supra*, at 694 (6th Cir. 1989)).

The United States Court of Appeals for the Sixth Circuit has observed that the dual function of a long term disability plan that is authorized both to decide whether an employee is

eligible for benefits and to pay those benefits "'creates an apparent conflict of interest.'" *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006) (quoting *Glenn*, 461 F.3d at 666). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 115. Defendant operated under the same apparent conflict of interest in the instant case as did the LTD plans in *Firestone, Elliot* and *Glenn*. However, this Court cannot accord any more weight to this apparent conflict of interest than to recognize that it exists, since the issue was not explored through discovery. *See Calvert*, 409 F.3d at 293 fn.2 ("The Court would have a better feel for the weight to accord this conflict of interest if Calvert had explored the issue through discovery."). As did the Sixth Circuit in *Calvert*, this Court will take into account only that plaintiff was denied benefits when he was forty-one years of age, which leads to the conclusion that payment of his claim to benefits would be expensive, making evident a potential for self-interested decision-making. *Id.* at 292 ("Considering Calvert's age, payment of this claim beyond the 24 month limitation period would be expensive for Liberty. As the district court noted, there was an incentive for Liberty to terminate coverage or deny the claim. Under such facts, the potential for self-interested decision-making is evident") (internal quotation omitted).[2]

### B. Defendant's Decision Was Arbitrary and Capricious

Although this Court "is mindful of the general rule that 'when a plan administrator

---

[2] Defendant argues that plaintiff waived any conflict of interest argument when the parties agreed to forgo discovery on this issue. *Defendant's Motion* at 13 fn.2. *See also Affidavit of Counsel* attached as *Exhibit 2* to *Defendant's Motion*. Plaintiff takes the position that, although he agreed to forgo discovery, he did not agree to waive any conflict of interest argument. *Plaintiff's Reply* at 4-5.

Defendant's argument is, in part, persuasive. Although discovery is not ordinarily permissible in an ERISA action requiring only review of the administrative record, discovery is permissible where a plaintiff pursues a challenge based on the decision-maker's alleged bias. *Calvert*, 409 F.3d at 293 fn.2 (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)). Thus, the Court will not review the evidence that plaintiff contends shows an actual conflict of interest.

chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious,' *McDonald [v. Western-Southern Life Ins. Co.]* , 347 F.3d [161,] 169 [6th Cir. 2003)], [this Court] nevertheless" concludes that defendant in the instant action improperly terminated plaintiff's benefits.  *See Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 510 (6th Cir. 2005).  Defendant's decision to terminate benefits was based on one EAR conducted by an employee of defendant, *AR* at 830-36, and on peer reviews by doctors chosen by defendant, *AR* at 850-97.  *Defendant's Motion* at 7.  These reports, however, are inadequate in at least two crucial respects.  *See Kalish*, *supra* (reliance on an inadequate file review was arbitrary and capricious).  First, none of these reports considered plaintiff's entire medical file.  Second, even if these reviewers had been provided plaintiff's entire medical file, the file did not support the decision to terminate benefits because the file did not include new evidence of improvement in plaintiff's condition.  Although neither of these factors, alone, render the defendant's decision arbitrary and capricious, when considered together they establish that defendant's decision to terminate plaintiff's LTD benefits was not "rational in light of the plan's provisions."  *See Daniel*, 839 F.2d at 267.

> 1. ***The decision to terminate plaintiff's LTD benefits was not based on consideration of plaintiff's complete disability file.***

Defendant asserts that it "reasonably based its decision to deny plaintiff additional long-term disability benefits upon a comprehensive review of plaintiff's medical evidence." *Defendant's Motion* at 14.  This Court disagrees.

The decision to terminate plaintiff's LTD benefits was initially based on the April 2005 EAR by Broadspire Field Care Manager Carole Fisher and the peer review of Dr. Superfine.

10

*Defendant's Motion* at 7 ("Based upon the April 2005 Employability Assessment Report, which located appropriate positions within plaintiff's restrictions, and Dr. Superfine's conclusion that plaintiff could perform sedentary work, the Plan terminated plaintiff's long-term disability benefits effective July 16, 2005.  *AR* at 673, 677-80").  However, the conclusions of Ms. Fisher and Dr. Superfine were based on a mere fraction of the medical records in plaintiff's disability file.  In this regard, it is significant that the list of documents submitted to the subsequent six peer reviewers consisted of several pages.  *See AR* at 937-39, 947-49, 942-43, 1054-61, 1062-67, 1068-74.

Moreover, although plaintiff's status was the subject of six more peer reviews during the course of his appeals from the June 2005 decision to terminate his benefits, none of those reviewers, apparently, was provided Dr. Pachman's June 2004 review and opinion that plaintiff be considered "permanently and totally disabled, without any meaningful work capacity for performing the duties of any occupation for which he is qualified by training, education, background or experience."  *AR* at 549.  The fact that plaintiff's LTD benefits were terminated based on reviews of some but not all the evidence suggests that defendant's decision was not based on "a deliberate, principled reasoning process."  *See Glenn,* 461 F.3d at 666.

### 2. *The decision to terminate benefits was not based on new evidence of improvement.*

In any event, defendant's decision to terminate plaintiff's LTD benefits was not based on evidence of improvement in plaintiff's condition such as to warrant the reversal of defendant's most recent decision to reinstate and continue plaintiff's LTD benefits.  "[U]nless information available to an insurer alters, in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those

11

payments." *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002).

Defendant appears to concede that the record offers no evidence of improvement in plaintiff's condition. *Reply Brief of Defendant,* at 12-14, Doc. No. 25. However, defendant takes the position that, where the standard is the deferential arbitrary and capricious standard, it need not point to evidence of medical improvement in order to justify its termination of plaintiff's benefits. This Court disagrees. Moreover, this Court is not the first to hold that a plan participant's long-term disability benefits may not be discontinued in the absence of a showing of improvement in his condition. In a case applying the deferential arbitrary and capricious standard, *Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11 (1st Cir. 2003), the United States Court of Appeals for the First Circuit explained that, where the claimant "provided the same type of evidence she had always proffered to prove her claim," *i.e.*, her treating physician's "medical opinion, backed up by his chart notes," the plan administrator was not justified "[i]n changing course" and reversing its "previous acceptance" of the same doctor's opinion. *Id.,* at 2-3. *See also Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001)("Reliance had not shown that Levinson's condition had improved"); *Platt v. Walgreen Income Prot. Plan For Store Managers*, 455 F. Supp.2d 734, 747 (M.D. Tenn. 2006) (the administrator failed to "produce any evidence of Plaintiff's medical improvement to justify terminating long-term disability benefits she had already been awarded"). *Accord Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2nd Cir. 2001)), (applying the *de novo* standard of review, disapproved the termination of benefits where that decision was "preceded by no significant change in [the claimant's] physical condition. . ."); *Walke v Group Long Term Disability Ins.*, 256 F.3d 835, 840 (8th Cir. 2001) ("[N]othing in the record justified Reliance's

decision that a change of circumstances warranted termination of the benefits it initially granted . . .").

In the case presently before this Court, there was apparently no new evidence that would justify reconsideration of defendant's earlier determination that plaintiff remained disabled. Defendant's suggestion that the April 2005 EAR was new because it "located appropriate positions within plaintiff's restrictions," *Defendant's Motion* at 7, is misleading. First, that EAR was based on Ms. Fisher's extremely limited review of the record. In any event, that EAR was not materially different from a September 10, 2003, assessment, which also concluded that there were jobs available for which plaintiff was reasonably qualified based on education, training, skills or experience. *Id.* at 457-58. Defendant nevertheless continued plaintiff's LTD benefits, *Id.* at 549-51, 1138, and this Court concludes that the April 2005 EAR does not qualify as evidence not available at the time benefits were granted or reinstated.

The fact that defendant's decision to terminate benefits was not based on new significant evidence or evidence of improvement since the prior determination of disability weighs against the propriety of defendant's decision to terminate plaintiff's LTD benefits. *See McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d at 586.

Although the arbitrary and capricious standard applicable to this action is deferential, it does not insulate the administrator's determination from all review. *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d at 661. In other words, "deferential review is not no review." *McDonald*, 347 F.3d at 172 (citing *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)). Instead, a court is "required to review 'the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Glenn*, 461 F.3d at 666 (quoting *McDonald*, 347 F.3d at

13

172).

In the case presently before this Court, taking all factors into account, *i.e.*, the consideration of an incomplete disability file, the absence of evidence of improvement in plaintiff's condition on which defendant's termination decision could have been based and the conflict of interest inherent in the context in which the termination decision was made, the Court cannot conclude that defendant's decision to terminate plaintiff's LTD benefits was a function of "a deliberate, principled reasoning process." *See Glenn*, 461 F.3d at 666.

Accordingly, the Court concludes that defendant's decision to terminate plaintiff's LTD benefits effective July 15, 2005, was arbitrary and capricious.

> C.      **Remedy**

When an ERISA plan administrator's decision to terminate LTD benefits is found to be arbitrary and capricious, courts may either award benefits to the claimant or remand the matter to the plan administrator for further action or consideration.  *Elliot*, 473 F.3d at 621 (citing *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 265 (6th Cir. 2006)).  While the United States Court of Appeals for the Sixth Circuit has not adopted a clear rule in this regard, it has noted that, generally, a "retroactive award is usually proper when [the] claimant had benefits and lost them," while "remand is appropriate when a decision-maker fails to make adequate findings or fails to provide [] adequate reasoning."  *Id.* at 622 (quoting *Buffonge v. Prudential Ins. Co. of America*, 426 F.3d 20, 31 (1st Cir. 2005) (internal citation omitted)).

In this action, because plaintiff has successfully challenged defendant's decision to terminate benefits, the Court concludes that a retroactive award is appropriate.  Thus, reinstatement of plaintiff's LTD benefits retroactive to the date of termination of those benefits is

14

the proper remedy.

**WHEREUPON** *Plaintiff's Motion to File Reply*, Doc. No. 26, is **GRANTED** in part and **DENIED** in part in accordance with this *Opinion and Order*, *Plaintiff's Motion*, Doc. No. 19, is **GRANTED** and *Defendant's Motion*, Doc. No. 21, is **DENIED**.  Defendant is **ORDERED** to reinstate plaintiff's LTD benefits.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** directing the reinstatement of plaintiff's longterm disability benefits.


September 21, 2007                             *s/Norah McCann King*
Date                                           Norah McCann King
                                               United States Magistrate Judge